Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ruben Castillo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 5130 | **DATE** | 1/15/2002 |
| **CASE TITLE** | Cigna Healthcare of St. Louis vs. Timothy N. Kaiser, M.D., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. This case will remain dismissed without prejudice for the pendency of the stay.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | |
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | JAN 16 2002 | | |
| ✓ | Docketing to mail notices. | | date docketed | | 23 |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| | | | date mailed notice | | |
| RO | courtroom deputy's initials | | | | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| CIGNA HEALTHCARE OF ST. LOUIS, INC., et al., | ) |
| Plaintiffs, | ) No. 01 C 5130 |
| v. | ) Judge Ruben Castillo |
| TIMOTHY N. KAISER, M.D., et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

This dispute formally began on May 26, 2000 when Defendant Timothy N. Kaiser, M.D.,

on behalf of certain healthcare providers, filed a class action suit against CIGNA HealthCare of

St. Louis, Inc. ("CHCSL"), CIGNA HealthCare of Texas, Inc. ("CHCTX"), and CIGNA

Corporation ("CIGNA Corp.") (collectively "CIGNA") in the Circuit Court of Madison County,

Illinois.[1] Thereafter, on July 3, 2001, CIGNA filed a class action petition in this Court to compel

arbitration of the state court dispute with a sub-class of providers pursuant to the Federal

Arbitration Act ("FAA"), 9 U.S.C. § 4. (R. 1, Class Action Pet.) We dismissed the petition

without prejudice due to jurisdictional concerns. (R. 2, July 6, 2001 Minute Order.) Under the

direction of the Court, both CIGNA and several of the named Defendants filed briefs with the

Court addressing: (1) whether this Court has subject matter jurisdiction over the petition to

compel arbitration; and (2) whether this Court should abstain from exercising jurisdiction given

---

[1] Dr. Suzanne LeBel Corrigan, who is not a party to this federal action, is also a class representative in the Madison County action, *Timothy N. Kaiser, M.D. and Suzanne LeBel Corrigan, M.D. v. CIGNA Corp., CIGNA HealthCare of St. Louis, Inc. and CIGNA HealthCare of Texas, Inc.*, No. 00-L-480 (filed May 26, 2000).

the pending state court proceeding in Madison County, Illinois.[2] For the reasons set out herein, the Court concludes that although we have jurisdiction over the petition to compel arbitration pursuant to 28 U.S.C. § 1332, we will abstain from exercising jurisdiction under the doctrine set forth in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny. As such, this action is stayed, and CIGNA retains full rights to reinstate this suit in the event of a material change in circumstances. (R. 1, Class Action Pet.)

## RELEVANT FACTS

### I. The Parties

CIGNA Corp. is a Delaware corporation with its principal place of business in Pennsylvania. CIGNA Corp. is the parent corporation of numerous health care subsidiaries, including CHCSL and CHCTX. CHCSL, a wholly-owned subsidiary of CIGNA Corp., is a Missouri corporation with its principal place of business in Missouri. CHCTX, a wholly-owned subsidiary of CIGNA Corp., is a Texas corporation with its principal place of business in Texas. CIGNA HealthCare of Illinois ("CHCIL"), an unnamed party to this action, is also a wholly-owned subsidiary of CIGNA Corp., incorporated in Delaware, with its principal place of business in Illinois. (R. 15, Pls.' Reply at 2.) Certain subsidiaries of CIGNA Corp., such as CHCSL and

---

[2] CIGNA named six Defendants in its class action petition to compel arbitration. This opinion focuses on the arguments set forth by the three Defendants represented by the state class counsel – Kaiser, Midwest NeoPed Associates, Ltd., and Northwestern Memorial Hospital (collectively "Provider Defendants"). One of the named Defendants, Northwestern Medical Faculty Foundation, has opted out of the Madison County litigation. (R. 13, Ex. 1, Opt-Out Letter.) Another, Evanston Northwestern Healthcare Corporation, is also not part of the Madison County litigation. (R. 20, Supp.) The sixth Defendant, Edward Hospital, has not filed any briefs with this Court concerning jurisdictional issues.

CHCTX, market and operate health care entities, including Preferred Provider Organizations ("PPOs").

Defendant Timothy N. Kaiser is a physician licensed to practice medicine in Illinois who practices and resides in Madison County, Illinois. Defendants Northwestern Medical Faculty Foundation and Midwest Neoped Associates are associations of physicians incorporated in Illinois with their principal places of business in Illinois. Defendants Northwestern Memorial Hospital, Evanston Northwestern HealthCare Corporation and Edward Hospital are also incorporated in Illinois and maintain their principal places of business in Illinois.

## II. The Underlying State Court Action

On May 26, 2000, Dr. Kaiser, along with Dr. Corrigan and on behalf of all providers who have entered into PPO Managed Care Agreements ("Agreements") with CHCSL, CHCTX or one of its affiliates, filed a class action complaint against CIGNA in the Circuit Court of Madison County, Illinois. The plaintiffs alleged that CIGNA breached the Agreements by using ClaimCheck, a claims processing computer software that allegedly reduced the payments due to the providers. (R. 1, Ex. A, State Class Action Compl. ¶¶ 32-41.) As certified by the Madison County Circuit Court on April 20, 2001, the class of providers includes those providers who, from May 26, 1990 to the present, executed a PPO Agreement with CIGNA and submitted claims pursuant to the Agreements that were audited by ClaimCheck prior to any payment. (R. 1, Ex. B, Am. Order of Class Certification.) Currently, the state action is in the discovery phase. (*See* R. 13, Exs. 11, 12, 13, 14.) Provider contract files are being collected and placed in a document depository in Belleville, Illinois, and CIGNA is currently cataloging those providers with arbitration clauses in their Agreements and those providers with Program Requirement

3

clauses. (R. 13, Defs.' Resp., Ex. 15, July 18, 2001 Matoesian Order; Ex. 16, Chart of

"Providers with Arbitration Agreements.")

Judge Matoesian, presiding over the Madison County suit, has repeatedly ordered that

CIGNA's participation in discovery shall not prejudice their right to seek enforcement of any

valid arbitration clause. (R. 21, State Court Record, Aug. 17, 2001 Matoesian Order, Nov. 28,

2001 Matoesian Order.) In fact, soon after the Court dismissed the petition to compel arbitration,

CIGNA filed a FAA motion in the Madison County action to compel arbitration of the claims of

seven class members. (R. 13, Defs.'s Resp., Ex. 3, Mot. to Compel Arbitration and Dismiss.) In

the state court motion to compel arbitration, CIGNA seeks to compel arbitration of the claims of

seven class members whose Agreements make reference to dispute resolution procedures in

accordance with Program Requirements. (*Id.*, Ex. 3 at 2-3.) CIGNA also seeks the appointment

of a special master to make recommendations with respect to the arbitration obligations of all the

providers and to resolve the issue of arbitrability of the claims of those providers who have

dispute resolution provisions incorporated into their Agreements by reference to Program

Requirements. (*Id.*, Ex. 3 at 3.)

### III. CIGNA's Motion to Compel Arbitration

On July 3, 2001, more than one year after the filing of the Madison County lawsuit,

CIGNA filed a class action petition against Defendants with this Court. CIGNA sought to create

a defendant subclass of providers – those whose Agreements contain or contained an arbitration

provision in the text of the Agreement – to compel members of the subclass to proceed with

individual arbitrations and to enjoin them from pursuing their claims in the Madison County

class action. The Court dismissed the lawsuit without prejudice on July 6, 2001 with directions to brief the jurisdictional issues.

## DISCUSSION

### I. Subject Matter Jurisdiction

The FAA does not create independent federal question jurisdiction under 28 U.S.C. § 1331. A federal district court has jurisdiction over a petition filed under the FAA only when the plaintiffs establish an independent basis of jurisdiction, such as diversity of citizenship. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). CIGNA claims that this Court has diversity jurisdiction under 28 U.S.C. §§ 1332 and 1367. Provider Defendants dispute that jurisdiction exists under §§ 1332 and 1367 and argue that: (1) CIGNA has failed to join CHCIL, an indispensable party under Federal Rule of Civil Procedure 19 whose joinder would destroy diversity jurisdiction; (2) CIGNA has failed to join Dr. Suzanne LeBel Corrigan, also an indispensable party whose joinder would destroy diversity jurisdiction; and (3) CIGNA cannot meet the minimum amount in controversy – $75,000 – required for diversity jurisdiction. Fed. R. Civ. P. 19. We are unpersuaded by the Provider Defendants' arguments that this Court lacks subject matter jurisdiction, and we find that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332.

#### A. CHCIL Is Not an Indispensable Party Under Rule 19

Provider Defendants argue that the Court lacks subject matter jurisdiction over this dispute because CHCIL is an indispensable party under Rule 19 whose joinder would destroy diversity jurisdiction. Fed. R. Civ. P. 19. Deciding whether a party should be joined under Rule 19 is a two-step inquiry. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 481 (7th Cir. 2001).

First, we must determine whether a party is necessary or one that should be joined if feasible. *Id.* (citations omitted). Second, if we conclude that CHCIL is a necessary party, but cannot be joined, we must go on to decide whether, "in equity and good conscience," the action should proceed in CHCIL's absence or be dismissed because of CHCIL's indispensability. Fed. R. Civ. P. 19(b). Rule 19(a) lists the criteria for determining whether a party is necessary. The Seventh Circuit has concluded that a party to a contract is a necessary party under Rule 19(a). *United States ex rel. Hall v. Tribal Dev. Corp.*, 100 F.3d 476, 478-479 (7th Cir. 1996) (tribe was a necessary party under Rule 19(a) as it was party to contract at issue in recission action). *See also Burger King Corp. v. Am. Nat'l Bank and Trust Co.*, 119 F.R.D. 672, 675 (N. D. Ill. 1988) ("If the absent party has a legally protected interest in the subject matter of the action – i.e. he is a party to a contract at issue – he falls squarely within the terms of Rule 19(a)(2).").

CHCIL, as a party to certain Agreements, is necessary.[3] CHCIL's interest may be impaired or impeded by the disposition of this action as required by Rule 19(a)(2)(i). In their federal petition, CIGNA asks the Court to enter an order pursuant to 9 U.S.C. § 4 directing the putative defendant class members who wish to pursue claims to proceed with "individual arbitrations with Plaintiffs, or *Plaintiffs' indirect subsidiaries or affiliates*, in the manner provided by the arbitration clauses in the Managed Care Agreements. . . ." (R. 1, Class Action Pet. at 19 (emphasis added).) CHCIL, therefore, could be ordered to conduct arbitrations with providers and, thus, could have an interest impeded by the disposition of this action. On the other hand, if CIGNA fails in its efforts to enforce the arbitration provisions, CHCIL might be

---

[3] CHCIL is the contracting CIGNA entity in the Agreements with each of the named Defendants other than Dr. Kaiser. (R. 13, Defs.' Resp. at 5.)

bound by these judicial decisions not to enforce the arbitration provisions and might be affected by a court judgment if CHCIL were found to be in privity with CIGNA. Hence, we agree with Provider Defendants that as a signatory to several of the Agreements at issue, CHCIL is a necessary party under Rule 19(a)(2)(i).[4]

The Court's Rule 19 analysis does not end with the finding that CHCIL is a necessary party because the joinder of CHCIL, an Illinois citizen, would destroy diversity jurisdiction as the named Defendants are also Illinois citizens.[5] As such, the Court must now decide whether CHCIL is indispensable by considering the four factors set out in Rule 19(b): (1) to what extent a judgment rendered in CHCIL's absence might be prejudicial to CHCIL or the existing parties; (2) to what extent the Court can avoid or lessen the prejudice with protective provisions in the judgment; (3) whether a judgment rendered in CHCIL's absence will be adequate; and (4) whether the Plaintiffs will have an adequate remedy if the action is dismissed for nonjoinder.

Application of the 19(b) factors leads us to conclude that CHCIL is not an indispensable party. It is true that the fourth factor favors a finding of indispensability. CIGNA would have an adequate remedy in state court if this action were dismissed for nonjoinder. CIGNA has already

---

[4] In response to Provider Defendants' argument that CHCIL is a necessary party, CIGNA argues that the only necessary parties to the federal action are CIGNA Corp., CHCSL and CHCTX because they are the parties sued in the Madison County class action and are raising arbitration as a defense. (R. 15, Pls.' Reply at 5). Furthermore, CIGNA argues that Provider Defendants are estopped from claiming that CHCIL is a necessary party to the federal action since they failed to sue CHCIL in the Madison County class action. We do not find CIGNA's argument to be persuasive. CHCIL is a necessary party under Rule 19(a) because it is a party to the Agreements with nearly all of the named Defendants, and for the reasons set out above.

[5] CIGNA and Provider Defendants dispute whether CHCIL is a Delaware or an Illinois corporation. (R. 13, Defs.' Resp. at 3; R. 15, Pls.' Reply at 2.) The dispute is irrelevant to this discussion. CHCIL is an Illinois citizen because its principal place of business is in Illinois. 28 U.S.C. § 1332(c)(1).

brought a FAA motion to compel arbitration of seven class members' claims in the Madison

County action, and CIGNA could amend this motion to add the providers that are subject of the

federal petition.[6] The first factor – possible prejudice to CHCIL or existing parties – also favors

a finding of indispensability. We have already discussed how a judgment in CHCIL's absence

might be prejudicial to CHCIL's interests. *See supra.* We could, however, lessen this prejudice

to CHCIL by shaping the relief to place the burden of proceeding with arbitration exclusively on

CIGNA Corp.[7] Finally and notably, Provider Defendants have not pointed out any ways in which

this Court's judgment might not be adequate or accord a "complete, consistent, [or] efficient

settlement" of the dispute. *Provident Tradesman Bank & Trust Co. v. Patterson*, 390 U.S. 102,

111 (1968). Therefore, pursuant to the discretion given the Court by Rule 19(b), we find that

CHCIL is not an indispensable party.

In short, as a party to certain Agreements at issue, CHCIL is a necessary party under Rule

19(a). Under the discretion afforded us pursuant to Rule 19(b), however, we do not find CHCIL

indispensable such that CHCIL should be joined and destroy our subject matter jurisdiction.[8]

---

[6] *See infra*, discussion, Section II on applying the FAA in state courts.

[7] As CIGNA notes, a signatory party, in this case the provider, may be compelled to arbitrate its claims against a nonsignatory, in this case the parent CIGNA Corp. (*See* R. 15, Pls.' Reply at 6 (citing *In re Managed Care Litig.*, 132 F. Supp. 2d 989 (S.D. Fla. 2000)).)

[8] Provider Defendants further argue that CHCIL's citizenship should be considered because CIGNA Plaintiffs are acting as representatives of CHCIL. We will not impute the citizenship of CHCIL to CIGNA Corp. Some courts have attributed the citizenship of the subsidiary to the parent where the subsidiary is an alter ego, or a mere instrumentality, of the parent. *See, e.g., Freeman v. Northwest Acceptance Corp.*, 754 F.2d 553, 558 (5th Cir. 1985) ("[w]hen two corporate entities act as one, or are in fact one, they should be treated as one for jurisdictional purposes"). *Contra Pyramid Secs. Ltd. v. IB Resolution, Inc.*, 924 F.2d 1114, 1120 (D.C. Cir. 1991) (rejecting Fifth Circuit's attribution analysis). There is no evidence that CHCIL is an alter ego of CIGNA Corp. Thus, we dismiss Provider Defendants' attribution argument.

## B. Dr. Corrigan Is Not an Indispensable Party Under Rule 19

Provider Defendants further allege that Dr. Corrigan, a Texas citizen, is a necessary and indispensable party. Dr. Corrigan's joinder would destroy diversity jurisdiction, as CHCTX, a Texas citizen, is a plaintiff in the federal action. (R. 13, Defs.' Resp. at 10-12.) Specifically, Provider Defendants allege that as a class representative in the Madison County action, Dr. Corrigan has an interest "relating to the subject of the [federal] action" which would be "impair[ed] or impede[d]" if she is not joined. (*Id.* (citing Fed. R. Civ. P. 19(a)(2)).) It is well-established that as a class representative, Dr. Corrigan owes a fiduciary duty to class members in representing their interests in the Madison County litigation. *Crawford v. Equifax Payment Servs., Inc.*, 201 F.3d 877, 880 (7th Cir. 2000). Furthermore, as Provider Defendants note, some courts have concluded that a class representative's duties may extend beyond the class action to separate litigation that affects the class. (R. 13, Defs.' Resp. at 10 (citing *Sondel v. Northwest Airlines, Inc.*, 56 F.3d 934, 938-939 (8th Cir. 1995) (class representatives in federal action filed state action; "[w]hen the class action lawsuit was certified by the federal district court, the certified representatives and the class counsel assumed certain fiduciary responsibilities to the Class. . . . We do not believe that these duties are confined to the four corners of the federal lawsuit.")).) We agree that a class representative's fiduciary duty to class members carries over to separate litigation affecting the class. Therefore, Dr. Corrigan, as a class representative in the Madison County class action, has an interest relating to the subject of this action under Rule 19(a)(2).

Although Dr. Corrigan is a necessary party under Rule 19(a), we must further determine whether she is indispensable and should be joined, thereby destroying diversity jurisdiction.

CIGNA argues that it is sufficient that Dr. Kaiser, the other class representative from the Madison County action, is a party to the federal action.[9] Specifically, CIGNA argues that Dr. Corrigan's joinder would serve no practical purpose because the putative defendant class members could be enjoined under Rule 65(d), and because Dr. Corrigan's interests do not diverge from Dr. Kaiser's, who is a party to this action. Fed. R. Civ. P. 65(d); (R. 15, Pls.' Reply at 8-9). Once again, as in the case of CHCIL, the Court has the discretion to decide, "whether in equity and good conscience," this action should proceed among those already parties. Fed. R. Civ. P. 19(b).

An examination of the factors enumerated in Rule 19(b) militates against a finding of indispensability.[10] There is no evidence suggesting prejudice to Dr. Corrigan or existing parties if she is not joined. We have no reason to doubt Dr. Kaiser's ability to protect the interests of the state class in this federal action. Furthermore, as CIGNA notes, Drs. Corrigan and Kaiser share the same counsel in the Madison County class action, and that counsel represents Dr. Kaiser in this action. There is no likely prejudice to the state class members or CIGNA if Dr. Corrigan is not joined. Moreover, a judgment rendered in Dr. Corrigan's absence would be adequate

---

[9] CIGNA's first argument against Dr. Corrigan's indispensability is irrelevant. (R. 15, Pls.' Reply at 8 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 945 (11th Cir. 1999)).) Provider Defendants do not argue that Dr. Corrigan is necessary simply because she is a *party* to the state action, but because she is a *class representative* in the state action. (R. 13, Defs.' Resp. at 10-11.) *MS Dealer* does not address the particularities of this scenario – whether a *class representative* in an underlying state action is a necessary party to an independent federal action to compel arbitration. Therefore, CIGNA's reliance on *MS Dealer* is misplaced.

[10] Only the fourth factor listed in Rule 19(b) – "whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder" – favors joinder of Dr. Corrigan. Fed. R. Civ. P. 19(b). If we join Dr. Corrigan and destroy diversity jurisdiction, CIGNA could bring another motion to compel in the Madison County state action. We still find, however, that this case can proceed without the joinder of Dr. Corrigan.

because this Court could enjoin Dr. Kaiser and all those who act in concert with him, including Dr. Corrigan and putative defendant class members, under Rule 65(d). Fed. R. Civ. P. 65(d).

In short, as a class representative in the Madison County action with a fiduciary duty to class members, Dr. Corrigan has an interest in this federal action. If her joinder would not destroy diversity, this Court would order it. Dr. Corrigan's Texas citizenship, however, destroys this Court's jurisdiction under 28 U.S.C. § 1332, and Providers Defendants' arguments and our Rule 19(b) analysis do not persuade us that Dr. Corrigan is indispensable so as to destroy diversity jurisdiction.

### C. CIGNA Has Established the Requisite Amount in Controversy under 28 U.S.C. § 1332

Provider Defendants also argue that this Court lacks diversity jurisdiction because CIGNA has failed to show that the amount in controversy exceeds the statutory minimum of $75,000. 28 U.S.C. § 1332(a). Specifically, Provider Defendants argue that CIGNA cannot meet the amount in controversy by aggregating the damages sought by each member of the class. (R. 13, Defs.' Resp. at 13.) We agree with Provider Defendants that class members' damage claims cannot be aggregated and that at least one plaintiff must satisfy the jurisdictional minimum. *In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997) (citations omitted). In determining whether a plaintiff satisfies the jurisdictional minimum, we must, however, respect a plaintiff's good faith evaluation of the stakes. *Barbers, Hairstyling for Men & Women, Inc. v. Bishop*, 132 F.3d 1203, 1205 (7th Cir. 1997). Our dismissal of a case for failure to meet the jurisdictional amount in controversy can only be justified if it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional

amount." *Id.* at 1205 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). In the case of a petition to compel arbitration, the amount in controversy is measured by the amount at stake in the arbitration proceeding. *Barbers*, 132 F.3d at 1205-1206. Because the Seventh Circuit has not decided from whose viewpoint the amount at stake should be measured, we can look at what Provider Defendants stand to win in an arbitration, what CIGNA stands to lose in an arbitration or a combination thereof. *Id.* at 1206.

No matter from whose viewpoint the stakes are measured, we are persuaded that the stakes exceed $75,000, and that we could not justify a dismissal on these grounds. First, in the underlying state action, Provider Defendants seek money damages for alleged systemic underpayment of claims since 1990. In the fiscal year 2000 alone, Provider Defendant Northwestern Memorial Hospital submitted PPO claims for reimbursement amounting to approximately $14,800,000. (R. 15, Pls.' Reply, Ex. A, Dec. of Sherry Husa ¶ 4.) Only a small fraction of these claims would have to be at issue to meet the $75,000 amount in controversy requirement. Second, given the sample reimbursement claim amounts at issue, CIGNA Plaintiffs can in good faith claim that each of them might be liable for damages in excess of $75,000. This estimate does not even include the cost to CIGNA of any equitable relief that an arbitrator might award to Provider Defendants. In their state court complaint, Provider Defendants requested that the court enjoin CIGNA from using the claims processing technology. (R. 1, Class Action Pet., Ex. A, Class Action Compl. at 16.) An injunction prohibiting any of the CIGNA Plaintiffs from using the software at issue would likely cost each Plaintiff more than $75,000 simply in labor costs to substitute for the work previously done by ClaimCheck. In short, CIGNA meets the jurisdictional amount in controversy requirement by their good faith showing that the amount at

stake in an arbitration proceeding exceeds $75,000. Therefore, the Court has jurisdiction over the motion to compel arbitration pursuant to 28 U.S.C. § 1332.[11]

## II. Abstention

The Court's discussion does not end with the finding of subject matter jurisdiction as our initial jurisdictional concerns arose mainly out of the fact that there is a pending proceeding among these same parties in state court. We acknowledge that federal district courts have a "virtually unflagging obligation to exercise the jurisdiction given them." *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-818 (1976). The Court also recognizes, however, that several doctrines have developed whereby a federal district court may abstain from exercising jurisdiction due to concerns over proper adjudication of constitutional questions, *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496 (1941), federal-state relations, *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *Younger v. Harris*, 401 U.S. 37 (1971), and "wise judicial administration." *Colo. River*, 424 U.S. at 817 (citations omitted). The *Colorado River* line of abstention cases is most applicable to the instant case, with its concern for the conservation of judicial resources when concurrent jurisdiction is contemporaneously exercised. *Colo. River*, 424 U.S. at 817; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). *See also Sverdrup Corp. v. Edwardsville Cmty. Unit Sch. Dist. No. 7*, 125 F.3d 546 (7th Cir. 1997).

---

[11] Although the Court finds subject matter jurisdiction pursuant to § 1332, we note that CIGNA did not argue diversity jurisdiction as a grounds for removal when it removed the Madison County action to the federal district court in the Southern District of Illinois. *Timothy N. Kaiser, M.D. and Susan LeBel Corrigan, M.D. v. CIGNA Corp., et al.*, No. 00 Civ. 571 (S.D.Ill. Sept. 13, 2000). CIGNA removed the action to federal court based on 28 U.S.C. § 1331, claiming that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, preempted the state plaintiffs' state law claims. *Id.* We question why CIGNA did not also base their removal petition on § 1332, given that diversity jurisdiction is the claimed basis for jurisdiction in this suit. (R. 1, Class Action Pet. ¶ 24.)

*Colorado River* sets out a two-part test to determine the propriety of abstention. First, the two pending suits must be parallel, or substantially the same parties must be contemporaneously litigating substantially the same issues in two forums. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, 962 F.2d 698, 700 (7th Cir. 1992) (citations omitted). Second, if the suits are parallel, the district court must balance ten factors in deciding whether to abstain in favor of a pending state court action. "No one factor is necessarily determinative." *Colo. River*, 424 U.S. at 818. The Court should carefully consider both the obligation to exercise jurisdiction and the combination of factors counseling against the exercise of jurisdiction. *Id.* at 818-819. We must consider: (1) whether the first court assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which jurisdiction was obtained by the concurrent forum. *Id.* at 818. Applying the *Colorado River* test in the arbitration context, the *Moses H. Cone* court added two factors to the test, including: (5) whether state or federal law provides the rule of decision; and (6) whether the state court proceeding adequately protects the federal plaintiff's rights. *Moses H. Cone*, 460 U.S. at 23-27. Furthermore, the Seventh Circuit has gleaned four additional factors from considerations noted in Supreme Court cases: (7) the relative progress of the state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Sverdrup*, 125 F.3d at 550.

Applying the first step of the *Colorado River* test, we find that the state suit and the federal suit are parallel actions. The parties to the federal and state suits are identical. Moreover, substantially the same issue – whether the providers should be compelled to arbitrate their disputes with CIGNA – is being litigated in both the federal and state forums. CIGNA has

attempted to differentiate the subjects of the state and federal motions to compel by filing the federal petition against those providers who have arbitration provisions in the text of their Agreement and the state motion against those providers whose Agreement contains a provision mandating dispute resolution according to Program Requirements. Despite this distinction, the issue in the federal action is still substantially the same as one of the issues pending in the state action – whether some providers will be compelled to arbitrate their disputes against CIGNA.

Having found that the state and federal actions are parallel, the Court must carefully consider the obligation to exercise jurisdiction along with the factors which militate in favor of abstention. Three of the factors – the first, second and ninth – do not weigh for or against abstention. First, the state court did not assume jurisdiction over a res, which would have given it exclusive jurisdiction over the dispute. Second, the federal forum is not inconvenient. Both this Court and the Madison County Circuit Court are located in the State of Illinois. Third, the availability of removal is not at issue, as the time period in which CIGNA could have removed from state court has expired. 28 U.S.C. § 1446(b).

Two factors, however, counsel against abstention. First, although retaining jurisdiction over the motion to compel will seemingly create piecemeal litigation, the Supreme Court has ruled that piecemeal litigation is not created where a petition to compel arbitration of an underlying state court dispute is brought and adjudicated in federal court. *Moses H. Cone*, 460 U.S. at 20-21. Second, federal law – the FAA – provides the rule of decision in this case, favoring the retention of federal jurisdiction. Yet, the source-of-law factor is less significant in a FAA case, where both federal and state courts have jurisdiction, than in an action where

enforcement lies solely with the federal courts. *Id.* at 24-25. Nevertheless, the presence of the

FAA in this action weighs against abstention.

Although two factors weigh against abstention, three factors strongly weigh in favor of

abstention. First, the state action was filed more than a year prior to the federal action. Second

and closely related, the state action has progressed further than the federal action. We have only

addressed jurisdictional issues since the filing and dismissal of the suit in July 2001, and we have

not proceeded to the merits of CIGNA's petition to compel arbitration. The state court has been

involved in the dispute between the providers and CIGNA since the class action complaint was

filed on May 26, 2000 in the Madison County Circuit Court. The parties have participated in

discovery, and moreover, on July 12, 2001, CIGNA filed a motion to compel arbitration in the

Madison County Circuit Court. Further relevant to the federal action, the Madison County

Circuit Court ordered the creation of a document depository for the provider contract files in

Belleville, Illinois. (R. 13, Defs.' Resp., Ex. 15, July 18, 2001 Matoesian Order.) CIGNA is

currently identifying those providers whose Agreements contain an arbitration provision and

those providers whose Agreements make reference to dispute resolution in accordance with

Program Requirements. (R. 13, Defs.' Resp., Ex. 16, Partial List of "Providers with Arbitration

Agreements.") The parties have agreed to brief the state motion to compel arbitration when an

initial review of provider contracts from sample markets has been completed, likely in the next

few months. In short, the parties have taken important steps in the Madison County litigation –

more than in the federal action – to resolve the arbitrability question.[12] We do not see the merit

---

[12] *Moses H. Cone* is instructive in determining which forum has made more progress in
resolving the arbitrability issue. The Supreme Court reversed the district court stay in part
because the federal suit was running well ahead of the state suit. *Moses H. Cone*, 460 U.S. at 21-

in bifurcating the arbitration question in this Court and the Madison County Circuit Court based on whether the provider has an arbitration provision in the Agreement or whether the Agreement mandates dispute resolution by reference to Program Requirements. Rather, we see an unnecessary duplication of judicial effort which flies in the face of "wise judicial administration."[13]  *Colo. River*, 424 U.S. at 817.

Third, the fact that the state action will protect CIGNA's arbitration rights weighs in favor of abstention.  CIGNA argues that the state court might not apply § 4 of the FAA and protect

---

22.  No substantial proceedings had taken in place in the state suit, whereas a § 4 petition had been filed in the federal district court and the opposing party had responded with full briefing and a request for oral argument.  *Id.* at 22, n.26.  The facts in the instant case are the reverse with regard to the relative progress of the federal and state proceedings.  No substantial proceedings have taken place in the federal suit, while the state court has made inroads into resolving the arbitrability issue.  According to Judge Matoesian's August 17, 2001 order, the state motion to compel arbitration would have been fully briefed in December 2001 with a January 2002 hearing date, if the parties themselves had not postponed briefing.  (R. 13, Defs.' Resp., Ex. 18, Aug. 17, 2001 Matoesian Order.)  In addition, Provider Defendants plan to raise all issues related to the enforceability of arbitration provisions in their responsive pleading in state court.  (R. 13, Defs.' Resp. at 10, n.8.)  Therefore, all issues of arbitrability, including those in the federal petition and those in the state motion, could be decided in Madison County Circuit Court as soon as the parties complete briefing on the state motion.

[13]  The duplication of effort in this Court and the Madison County Circuit Court also leads us to another factor in the abstention analysis – whether CIGNA's federal claim is of a vexatious or contrived nature.  Provider Defendants label as vexatious CIGNA's filing of the federal petition and alleged delay in the progress of the arbitration issue in the Madison County action.  (R. 13, Defs.' Resp. at 9.)  We also question why CIGNA did not first attempt to compel arbitration in the state court before filing the petition to compel arbitration in federal court.  We recognize, however, that CIGNA has the right to petition a federal court for relief under the FAA.  CIGNA's filing of the § 4 petition in the Northern District of Illinois, rather than the Southern District of Illinois, however, leads the Court to question whether forum-shopping was a motivating factor in CIGNA's decision to file the § 4 petition in this Court.  After CIGNA removed this case to the Southern District of Illinois in July 2000, the case was remanded to the Madison County Circuit Court for lack of subject matter jurisdiction.  It certainly appears that CIGNA strategized that their odds of obtaining jurisdiction were better in the Northern District than in the Southern District.

CIGNA's arbitration rights. (R. 3, Pls.' Mem. at 8-9.) CIGNA's doubts arise from the language

of § 4: "A party . . . may petition any United States district court . . . for an order directing that

such arbitration proceed . . . . " 9 U.S.C. § 4. In *Moses H. Cone*, the Supreme Court left open

the question whether state courts, as well as federal courts, are obliged to apply § 4 of the FAA.

*Moses H. Cone*, 460 U.S. at 26-27. At the same time, the Supreme Court observed in a footnote

that at least one state court had held that state courts are required to issue § 4 orders. *Id.* at 27

n.35. Since the *Moses H. Cone* decision, the Supreme Court has continually reserved ruling on

whether § 4 of the FAA applies in state courts. *See Southland Corp. v. Keating*, 465 U.S. 1, 16

n.10 (1984); *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 477

(1989). Although there is uncertainty as to whether a state court is obligated to apply § 4, we

have no indication that the Madison County Circuit Court would not issue an order directing

arbitration if it was appropriate.[14] In fact, Judge Matoesian issued a scheduling order on the § 4

petition, directing briefing on the arbitration issue to be completed by December 2001, with a

hearing date in January 2002. (R. 13, Defs.' Resp., Ex. 18, Aug. 17, 2001 Matoesian Order.)[15]

Judge Matoesian has also protected CIGNA's right to seek arbitration by repeatedly ordering that

CIGNA's participation in merits discovery shall not constitute a waiver, or otherwise prejudice,

_____

[14] To support their anti-abstention argument, CIGNA relies heavily on *We Care Hair Development, Inc. v. Engen*, 180 F.3d 838 (7th Cir. 1999), where the Seventh Circuit affirmed the district court's order compelling arbitration when there was a pending state court lawsuit. The instant case is distinguished from *We Care Hair* in that the Madison County Circuit Court has not yet had an opportunity to rule on arbitrability. In *We Care Hair*, the underlying state court had already held the arbitration clause void and unenforceable such that federal court abstention would have left plaintiff's arbitration rights unprotected. *We Care Hair*, 180 F.3d at 842.

[15] The Court has learned from the parties that the briefing of the state motion to compel arbitration has been postponed, at Provider Defendants' request and CIGNA's agreement, until review of provider contracts from sample markets has been completed.

CIGNA's right to seek enforcement of valid arbitration clauses. (R. 21, State Court Record, Aug. 17, 2001 Matoesian Order, Nov. 28, 2001 Matoesian Order.) We have no reason to believe that Judge Matoesian will thwart CIGNA's attempt to arbitrate with providers if he finds the arbitration provisions valid and enforceable.[16] In short, CIGNA's rights will be adequately protected in the state court proceeding.[17]

After a careful weighing of the factors militating for and against abstention, we find that abstention is warranted in this case. The Madison County Circuit Court has made more progress than this Court in addressing the arbitration issue and will protect the arbitration rights of CIGNA. This Court expressly commends Judge Matoesian, its judicial colleague, for his fine

---

[16] Scholars have noted that even if § 4 of the FAA is held not to apply to state courts, § 2 – which compels judicial enforcement of arbitration agreements "in any contract . . . evidencing a transaction involving commerce" – imposes duties on state courts indistinguishable from those imposed by § 4. Section 2 requires state courts to enforce arbitration agreements, and a § 4 order to compel arbitration is a necessary tool for § 2 enforcement. Jean R. Sternlight, *Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions*, 147 U. Pa. L. Rev. 91, n. 96 (1998) (citing Ian R. Macneil et al., *Federal Arbitration Law: Agreements, Awards and Remedies Under the Federal Arbitration Act* §§ 10.8.1.3). Practically, then, the Madison County Circuit Court might need to apply § 4 in order to fulfill its enforcement duties under § 2. Therefore, CIGNA's worry that CIGNA's arbitration rights will not be protected in the state action is unconvincing.

[17] The eighth factor – the presence or absence of concurrent jurisdiction – relates to whether the state court proceedings will adequately protect CIGNA's rights. As previously noted, the Supreme Court has reserved ruling on whether state courts must apply § 4 of the FAA, while at the same time holding that § 2 applies in state courts. *See Southland*, 465 U.S. at 15-16. State courts have, however, voluntarily applied § 4 when the contract at issue involves interstate commerce. *See, e.g., Aste v. Metro. Life Ins. Co.*, 729 N.E.2d 629, 632 (Ill. App. Ct. 2000) (reversing Circuit Court's order compelling arbitration under the FAA, but finding the FAA applicable because the contract involved interstate commerce). The Madison County Circuit may, for example, find interstate commerce in this case due to the multistate structure of CIGNA and its subsidiaries as well as the likely travel across state lines of both PPO patients and providers for treatment purposes. Moreover, if the state court held the FAA to be inapplicable, CIGNA could protect its right to arbitration with a motion to compel arbitration and stay the judicial proceedings under § 2 of the Illinois Uniform Arbitration Act. 710 ILCS 5/2.

work in the Madison County action. This Court has long rejected any notion that federal courts have any superior abilities over their state court counterparts. To retain jurisdiction over CIGNA's petition to compel arbitration, while a similar motion is pending in the Madison County action, would not constitute "wise judicial administration." *Colo. River*, 424 U.S. at 817. Proper respect for the complex work and progress made in the pending Madison County action requires that we abstain from exercising jurisdiction over CIGNA's petition to compel arbitration.

## CONCLUSION

For the foregoing reasons, the Court finds that it has jurisdiction over CIGNA's petition to compel arbitration pursuant to 28 U.S.C. § 1332. We abstain from exercising jurisdiction over the petition, however, in light of the pending parallel proceeding in Madison County Circuit Court, and stay this action. (R. 1, Class Action Pet.) The parties may seek leave of this Court to file a motion for reconsideration in the event that material changes in circumstances warrant removal of the stay.

In order that this case remain off the Court's active calendar, the Court affirms its July 6, 2001 dismissal of the case without prejudice for the pendency of the stay. CIGNA Plaintiffs, however, shall retain their full rights to reinstate this lawsuit whenever the Court decides that the stay is no longer appropriate.

ENTERED:

Judge Ruben Castillo
United States District Court

Dated: January 15, 2002